IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**CHRISTOPHER BAILEY**,

    Plaintiff,

    v.

**STEVE SHELTON, et al.**,

    Defendants.

No. 3:07-cv-01905-MO

OPINION AND ORDER


**MOSMAN, J.**,

Pro se plaintiff Christopher Bailey, a prisoner in the custody of the Oregon Department of Corrections ("ODOC"), brought this suit under 42 U.S.C. § 1983. He alleged Dr. Steve Shelton, B. Whelan, and Dr. Lytle were deliberately indifferent to his medical needs in violation of the Eighth Amendment. I granted defendants summary judgment, holding Mr. Bailey's claims were time-barred. The Ninth Circuit affirmed as to Dr. Shelton and B. Whelan, but reversed as to Dr. Lytle, holding Mr. Bailey raised a triable issue of fact as to whether the claim against Dr. Lytle was timely. On remand, Dr. Lytle moves for summary judgment on the merits [50].[1]

---

[1] Counsel for Dr. Lytle filed a notice of death on December 20, 2011 [77], after plaintiff had responded to the motion for summary judgment. Plaintiff then asked for assistance identifying a defendant to substitute [79], and Dr. Steven Shelton was substituted as defendant on February 16, 2012, solely for purposes of this proceeding [85]. I will simply refer to Dr. Lytle as the defendant in this opinion.

1 – OPINION AND ORDER

## FACTUAL BACKGROUND[2]

Mr. Bailey's claim is based on the theory "that Dr. Lytle [was] deliberately indifferent to properly diagnosing and treating his scabies in a timely manner while incompetently managing the chronic pain and suffering associated with this medical condition."  (Pl.'s Resp. [66] 1–2).   His allegations cover roughly two-years of treatment while in the custody of the ODOC.

In October of 2004, Mr. Bailey first complained about a skin rash.  (Pl.'s Aff. [4] ¶ 1). The rash was minor and records show it was resolved by November 10, 2004, when Mr. Bailey reported that a change to cotton blankets, which Dr. Lytle allowed, fixed the problem.  (Whelan Decl. [52] ¶ 9, Ex. 2 at 24, 27).   Mr. Bailey then reported three small sores on December 1, 2004, and that he had been putting baking soda on his feet; a nurse instructed him to stop doing that and gave him a hydrocortisone cream.  (*Id*. at ¶ 10, Ex. 2 at 27–28).   When he complained of a rash three more times during December of 2004 and January of 2005, Mr. Bailey received more cream and instructions regarding soaps to try, and a nurse diagnosed eczema.  (*Id*., Ex. 2 at 28); (Pl.'s Aff. [4] 1).   Mr. Bailey received Benadryl for itching on February 2, 2005.  (Whelan Decl. [52] ¶ 14).   On February 14, 2005, he reported it was working and "most of the rash [wa]s gone" and a nurse noted that the only visible rash was on his right foot.  (*Id*., Ex. 2 at 29); (Pl.'s Aff. [4] ¶ 6).

In March, he went to sick call three or four more times and received a new "TAC" cream on March 22, 2005.  (Pl.'s Aff. [4] ¶¶ 9, 16, 19); (Whelan Decl. [52] ¶¶16–19).   He saw Dr. Lytle for the first time on March 25, 2005, who also diagnosed eczema and instructed him to use the TAC cream, which Mr. Bailey had not yet tried.  (Whelan Decl. [52] ¶ 19, Ex. 2 at 30).   In April of 2005, Mr. Bailey saw a Physician's Assistant ("PA"), who also diagnosed eczema and tried some other treatments.  (*Id*. at ¶ 20, Ex. 2 at 32).   According to Mr. Bailey, a new ointment the

---

[2] Except where noted, I find the facts summarized in this section to be undisputed for purposes of summary judgment.

2 – OPINION AND ORDER

PA gave him provided four hours of relief when applied. (Pl.'s Aff. [4] ¶ 30). In May of 2005 medical personnel noted improvement and modified Mr. Bailey's treatment. (Whelan Decl. [52] Ex. 2 at 32). When Mr. Bailey continued to complain, Dr. Lytle diagnosed scabies on June 2, 2005, and prescribed Elimite cream, although Mr. Bailey insisted he did not have scabies. (Pl.'s Aff. [4] ¶¶ 41–42). Mr. Bailey kept complaining, was told it would take time for symptoms to subside, and received pain relievers, creams, and Benadryl to relieve itching. (Whelan Decl. [52] ¶ 31). According to Dr. Lytle's notes, Mr. Bailey said in June of 2005 that he did not want a second Elimite treatment because the first treatment caused severe itching without improving his skin. (*Id.*, Ex. 2 at 46). According to plaintiff, he complained about "burning pain" the day after his scabies treatment, wanted a second treatment anyway, and received pain relievers and hydrocortisone cream instead. (Pl.'s Aff. [4] ¶ 43).

On July 5, 2005, a nurse noted there were no signs of rash on Mr. Bailey's body. (Whelan Decl. [52] Ex. 2 at 36). Mr. Bailey returned to medical a few times in July, complaining of a continued rash but stating he did not think it was scabies. (*Id.*). Dr. Lytle observed the scabies was treated with "good results," diagnosed an eczema rash, and prescribed a cream for itching. (*Id.* Ex. 2 at 37). In August and September, Mr. Bailey returned a handful of times to see medical personnel, complaining of itching and bumps on his skin. (Pl.'s Aff. [4] ¶¶ 55–62). He received Benadryl and hydrocortisone cream. (*Id.* at ¶¶ 61–62). He next returned on October 26, 2005, with similar complaints, and Dr. Lytle increased the Benadryl prescription. (*Id.* at ¶ 65).

After this visit, Mr. Bailey did not seek medical attention until May 10, 2006. (*Id.* at ¶ 68). At that point he reported the Benadryl was helping and told Dr. Lytle he "was resting better with the increased dose of Benadryl." (*Id.*). Dr. Lytle prescribed TAC cream and the Benadryl continued. (*Id.* at ¶ 69); (Whelan Decl. [52] ¶ 43). In June of 2006, Mr. Bailey reported

3 – OPINION AND ORDER

worsening skin conditions.   On July 12, 2006, Dr. Lytle tried another medication, Medrol, and stuck with his diagnosis of eczema.   (Pl.'s Aff. [4] ¶ 74).   On July 26, 2006, Mr. Bailey reported some improvement from the new medication and Dr. Lytle noted better, but bad, skin conditions. (Whelan Decl. [52] ¶ 49).   On August 2, 2006, Dr. Lytle saw Mr. Bailey again.   According to plaintiff, Dr. Lytle expressed "shock" that plaintiff still suffered from itching.   (Pl.'s Aff. [4] ¶ 79).   Dr. Lytle ordered a skin biopsy, which came back positive for scabies on August 9, 2006. (Whelan Decl. [52] Ex. 2 at 9, 46).   The same day that he received the results, Dr. Lytle prescribed Elimite, took Mr. Bailey off of work duty, and ordered Mr. Bailey to continue Benadryl.   (*Id*., Ex. 2 at 9).   On August 22, 2006, Mr. Bailey received a second Elimite treatment.   (*Id*.).   He states that he wanted the second treatment earlier and it was initially denied to him.   (Pl.'s Aff. [4] ¶ 13). On August 30, 2006, he saw Dr. Lytle, who "was happy with the results, but was acting weird." (*Id*. at ¶ 14).   He then received a third treatment.   After that, he experienced some continued dryness and itchiness and complained of several other problems over the course of the next year. His skin condition gradually cleared up, however, and his claim only takes issue with the delay in diagnosing and treating scabies, rather than these later events.

In addition to medical records, Dr. Lytle submitted a declaration from Dr. Patricia Norris, a dermatology professor and practitioner who reviewed the medical records.   She opines that the "course of treatment that Inmate Bailey's doctors chose [was not] medically unacceptable under the circumstances."   (Norris Decl. [53] ¶ 7).   She states that "traditional tests" for diagnosing scabies are less than fifty percent accurate and that it is difficult to distinguish between other skin problems, residual problems from reactions to prior treatment, and scabies.   (*Id*. at ¶¶ 14, 20). She explains that one treatment of Elimite is normal, which may be followed by several weeks of itching even if successful.   (*Id*. at ¶ 22).   Follow-up Elimite treatments may irritate the skin, so

4 – OPINION AND ORDER

additional treatments are done only if necessary.  (*Id*. at ¶ 23).  She opines that the repeated diagnosis of eczema in Mr. Bailey's case was "reasonable" and that the treatment Mr. Bailey received was "appropriate" and "medically acceptable under the circumstances."  (*Id*. at 5–8).

## DISCUSSION

An Eighth Amendment violation based on deficient medical care requires "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  If a plaintiff shows a "serious medical need," the analysis turns on the presence of "deliberate indifference," which "is evidenced only when 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Negligence does not establish deliberate indifference.  *Id*.  Nor does mere "difference of medical opinion" concerning what treatment is appropriate.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).  Further, "whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment . . . [and] does not represent cruel and unusual punishment" under the Eighth Amendment.  *Estelle*, 429 U.S. at 107.

Assuming Mr. Bailey had serious medical needs, the undisputed facts summarized above establish that there is no issue of material fact as to whether Dr. Lytle was deliberately indifferent.  There is no indication Dr. Lytle was doing anything but trying in good faith to remedy Mr. Bailey's skin condition.  And, even drawing all reasonable inferences in Mr. Bailey's favor, the facts do not suggest anything more than a possibility of negligence.  In particular, Dr. Lytle tried several different treatments to remedy Mr. Bailey's problem and to relieve symptoms, and on

several occasions continued treatments that were helping Mr. Bailey.  Other medical personnel also diagnosed Mr. Bailey with eczema during 2005 and 2006 and there is no clear showing that plaintiff had anything but eczema until the summer of 2006.  Additionally, as soon as Dr. Lytle received the results of the scabies test in 2006—a test Dr. Lytle himself ordered—he aggressively and successfully treated the condition.  Even Mr. Bailey describes this as a situation where Dr. Lytle was trying his best to solve the problem.  Mr. Bailey describes Dr. Lytle as in "shock" when attempts at remedying the skin problem failed and also declares that "[m]edical had no idea what was wrong with me" and that Dr. Lytle stated several times that he simply "did not know what I had."  (Pl.'s Aff. [4] ¶¶ 3, 6, 9, 11).  In addition, Mr. Bailey has not disputed Dr. Lytle's expert testimony that the course of treatment here was reasonable, appropriate, and medically acceptable.  Nor has he presented anything but conclusory statements that Dr. Lytle had an improper motive.

Accordingly, there is no genuine issue of material fact and Dr. Lytle is entitled to summary judgment.  *See, e.g, Ciccone v. Sapp*, 238 F. App'x 487, 490 (11th Cir. 2007) (holding a delay in re-treating and re-diagnosing scabies did not raise a triable issue because the plaintiff was repeatedly prescribed medication, was seen multiple times, and because "[m]atters of medical judgment extend to whether the defendants should have provided additional forms of treatment").

## CONCLUSION

For the foregoing reasons, I GRANT Dr. Lytle's Motion for Summary Judgment [50].

IT IS SO ORDERED.

DATED this 23 day of February, 2012.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court